UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg Division

JESSICA JOYCE GIFFORD,

     Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES, LLC,

     Defendant.

Civil Action No. 1:26-cv-14   Kleeh

> ELECTRONICALLY
> FILED
> 2/25/2026
> U.S. DISTRICT COURT
> Northern District of WV

**COMPLAINT**

In this case, which is representative of numerous others, Defendant Equifax Information Services, LLC ("Equifax") combined or mixed Plaintiff's credit file with another person, which resulted in the publication of inaccurate information, including credit cards and account inquiries. This is not the first time Equifax has made this mistake with Plaintiff. Despite multiple requests for reinvestigation and correction by Ms. Gifford, Equifax failed to reasonably investigate her disputes and continued to inaccurately freeze her report so that she could not obtain credit. Ms. Gifford repeatedly alerted Defendant that her file was inaccurate, but Defendant failed to ensure the accuracy of her credit information. Defendant's false reporting caused continuous injury to Plaintiff. Plaintiff brings this action for actual, statutory, and punitive damages, and for costs and attorney's fees, pursuant to 15 U.S.C. § 1681 et seq. ("Fair Credit Reporting Act" or "FCRA").

**PARTIES**

1. Plaintiff Jessica Gifford ("Plaintiff" or "Ms. Gifford") is a "consumer" as defined by 15 U.S.C. § 1681a(c).

2. Defendant Equifax Information Services, LLC ("Equifax") is a corporation registered to do business in West Virginia with its principal office in Georgia.

1

3.    (a)    Defendant Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f).  Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

(b)    Equifax disburses such consumer reports to third parties under contract for monetary compensation.

**JURISDICTION**

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

**STATEMENT OF FACTS**

5.    Plaintiff Jessica Gifford resided in the City of Morgantown, Monongalia County, WV.

6.    Plaintiff's twin brother also resided in Morgantown, WV.

7.    In addition to these similarities, Equifax's files reflected a merged or mixed credit history between Plaintiff and her twin.

**Plaintiff's Initial Efforts to Fix Credit Reporting Issues**

8.    In January 2021, Plaintiff learned that her credit report contained inaccuracies.

9.    Upon reviewing her credit disclosure, Plaintiff identified multiple accounts that did not belong to her that were being reported on her disclosure.

10.    Plaintiff disputed these false tradelines by mailing letters to Experian, Equifax, and TransUnion in February 2021.

11.    However, Equifax did not correct Plaintiff's credit disclosure.

12.    Instead, Equifax confirmed that Plaintiff owed accounts that did not belong to her.

13. Equifax reported numerous inaccuracies related to Plaintiff's accounts, aliases, and inquiries from legitimate creditors.

14. Despite this internally conflicting information, Equifax never undertook any steps to investigate, identify, or correct possible inaccuracies in its reporting on Plaintiff's credit following her dispute.

15. On or about May 8, 2022, Ms. Gifford received correspondence from Equifax titled "Credit File" with a confirmation number, but the correspondence was addressed to "Jesse Gifford" at 1021 Valleyview Ave Apt C10, Morgantown, WV 26505, reflecting that Equifax had associated Ms. Gifford's dispute and/or identifying information with her twin brother's file rather than maintaining a separate, accurate file for Ms. Gifford.

16. Equifax denied that Plaintiff even had a credit file and requested additional information.

17. On May 20, 2022, Equifax responded that Plaintiff did not have a credit report.

18. Plaintiff filed a lawsuit on September 27, 2022, titled *Gifford v. Equifax Information Services, et al.*, 1:22-cv-00101-GMG (N.D.W.Va. 2022).

19. The matter was resolved with a confidential settlement agreement.

20. Equifax's compliance failures continued thereafter.

21. On July 3, 2025, Plaintiff attempted to obtain her Equifax credit report online via annualcreditreport.com.

22. Equifax did not provide a disclosure.

23. Chase Card Services declined to extend credit to Plaintiff on August 24, 2025, because Equifax would not allow Chase to access her credit report.

24. Plaintiff never requested a credit freeze or to block access to her credit.

25.     Plaintiff mailed a letter to Equifax on October 15, 2025, disputing her lack of access to her credit disclosure and saying that Equifax had put a freeze on her credit without her consent.

26.     Equifax received Plaintiff's dispute letter on October 19, 2025.

27.     Equifax did not respond to Plaintiff's dispute.

28.     Equifax failed to conduct a reasonable reinvestigation, failed to timely respond, and failed to provide Ms. Gifford with a complete file disclosure and the results of any reinvestigation.

### Damage

29.     Defendant has failed and refused to perform a meaningful and searching inquiry into the substance of Plaintiff's dispute and to accurately report Plaintiff's credit.

30.     Defendant froze access to Plaintiff's credit without her request or consent.

31.     Defendant has entirely denied her access to the credit marketplace.

32.     Plaintiff is eager to begin her financial life on the right foot, but Equifax's willful violations of the FCRA prevent her from accessing the credit market and being evaluated by lenders on her merit.

33.     As a result of Defendant's conduct, Plaintiff has suffered loss of credit; loss of the ability to purchase and benefit from credit; increased insurance rates; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

34.     Plaintiff has been unable to obtain or extend various important financial, insurance, and health services, including those that periodically require a credit report pull or updated financial history.

35.     The imposition of the involuntary credit freeze caused Plaintiff to fear for her financial stability and her ability to access credit in case of an emergency.

## Equifax's Willful Misconduct

36.     Placing involuntary credit freezes runs counter to the findings of Congress incorporated into the FCRA. These findings recognize that:

> "(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.
> ...
>
> (3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.
> (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
> 15 U.S.C. § 1681(a).

37.     A person's credit history is essential information for the proper functioning of the banking system and commerce in general.

38.     Freezing a consumer's credit report without the consumer's approval impedes this system.

39.     It would be an unreasonable reading of the FCRA to allow consumer reporting agencies, which are in the business of providing credit reports, to block access to a consumer's credit reports with impunity when the consumer's permission has not been obtained.

40.     Equifax has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

41.     As early as 1991, the Federal Trade Commission ("FTC") brought an enforcement action against Experian [formerly TRW, Inc.] in the United States District Court for the Northern District of Texas. *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Texas 1991). A similar enforcement action was brought against Equifax in 1992 and resulted in a consent order in which Equifax agreed to maintain reasonable procedures to prevent the occurrence or recurrence of mixed files.

42.     Despite the consent order with the FTC, Equifax's computer system causes these mixes because it does not require or use full identifying information for a potential credit grantor's inquiry, even when unique identifiers such as a full social security number are present. Upon information and belief, Equifax does this in order to sell more credit reports.

43.     Equifax has knowledge that its computer system causes one individual's credit report to be confused with another individual's credit report, causing a "mixed file."

44.     Moreover, Equifax has been sued repeatedly for failing to prevent mixed consumer files, including an $18.6 million dollar verdict against Equifax after it placed the information of another consumer into the plaintiff's record with the same name and failed to correct its errors. *Miller v. Equifax Information Services, LLC*, 3:11-cv-1231 (D. Or. 2011); *Williams v. Equifax Information Solutions, LLC*, No. 48-2003-CA-9035-O (Orange County 2007); *Apodaca v. Discover Financial Services*, 417 F. Supp. 2d 1220 (D.N.M. 2006).

45.     Numerous cases alleging a mixed file and/or a failure to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains have also been brought in this circuit. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235 (4th Cir. 2009); *Sloane v. Equifax Info. Servs.,* 510 F.3d 495 (4th Cir. 2007).

46.     Equifax knowingly chooses to ignore these notices of its mixed file problems. It does so even though it already possesses a simple, easy, and inexpensive means to correct and avoid the problem.

47.     Despite these lawsuits and enforcement actions, Equifax has not significantly modified its procedures to ensure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

48.     Upon information and belief, Equifax has not, and does not intend, to modify its procedures to comply with this section of the FCRA because compliance would drastically increase its operating expenses.

49.     Accordingly, Equifax's violations of 15 U.S.C. § 1681e(b) were willful and make it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

50.     Equifax's failure to modify its procedures caused substantial harm to the Plaintiff.

51.     Equifax's misguided attempt to address Plaintiff's credit reporting issue by blocking all access to her report contradicts Equifax's duty "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." *Id.* at § 1681(a)(4).

**COUNT ONE:**
**(Violation of 15 U.S.C. § 1681c-1(i)(2)(A))**

52.     The allegations of the Complaint set forth above are included herein as if set forth at length.

53.     At some point unknown to Plaintiff, Equifax has placed a freeze on Plaintiff's credit report.

54.     Equifax has not provided appropriate notice under the FCRA because more than five (5) days have passed since the imposition of the credit freeze. See 15 U.S.C.§ 1681c-1(i)(2)(B)(i).

55. Section 1681c-1(i)(2)(A)(i) of the FCRA requires that:

> Upon receiving a direct request from a consumer that a consumer reporting agency place a security freeze, and upon receiving proper identification from the consumer, the consumer reporting agency shall, free of charge, place the security freeze not later than . . . in the case of a request that is by toll-free telephone or secure electronic means, 1 business day after receiving the request directly from the

consumer."

56.    Section 1681c-1(i)(2)(A)(i) of the FCRA sets forth the conditions under which a Consumer Reporting Agency may place a security freeze on a consumer's account. Notably, section 1681c-1(i)(2)(A)(i) requires that the consumer submit a "direct request" to "place a security freeze" before a Consumer Reporting Agency may act.

57.    Plaintiff never sent such a request, pursuant to the FCRA or otherwise.

58.    By placing a credit freeze on Plaintiff's accounts without a direct request, Equifax willfully violated the FCRA.

**COUNT TWO:**
**(Violation of 15 U.S.C. § 1681i(a))**

59.    The allegations of the Complaint set forth above are included herein as if set forth at length.

60.    Defendant failed to conduct a reasonable reinvestigation of the information in Plaintiff's credit file after receiving actual notice of inaccuracies; failed to delete inaccurate information upon actual notice of inaccuracies; failed to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and relied upon verification from a source it has reason to know is unreliable, in violation of 15 U.S.C. § 1681i.

61.    Defendant failed to provide written notice to Plaintiff of the results of its reinvestigation not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency in violation of 15 U.S.C. § 1681i(a)(6)(A).

62.    Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

8

63.     As a result of Defendants' action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, aggravation, inconvenience, embarrassment, and frustration.

**COUNT THREE:**
**(Violation of 15 U.S.C. § 1681e(b))**
**FAILURE TO ASSURE ACCURACY**

64.     Plaintiff incorporates all of the preceding paragraphs by reference.

65.     Defendant failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files maintained and published concerning Plaintiff, in violation of 15 U.S.C. § 1681e(b).

66.     Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

67.     As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, aggravation, inconvenience, embarrassment, and frustration.

**COUNT FOUR:**
**(Violation of 15 U.S.C. § 1681g)**
**FAILURE TO DISCLOSE FILE**

68.     Plaintiff incorporates all of the preceding paragraphs by reference.

69.     Defendant failed to disclose all information in Plaintiff's file when requested, including the sources of information in her file, in violation of 15 U.S.C. § 1681g(a)(1)-(6).

70.     Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

9

71.    As a result of Defendants' action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, aggravation, inconvenience, embarrassment, and frustration.

**COUNT FIVE:**
**(Violation of 15 U.S.C. § 1681j(a)(1)(A))**

72.    Plaintiff incorporates all of the preceding paragraphs by reference.

73.    Plaintiff requested a free annual file disclosure from Equifax, including on or about July 3, 2025.

74.    Defendant Equifax failed to provide a disclosure when Plaintiff requested, in violation of 15 U.S.C. § 1681j(a)(1)(A).

75.    Defendant's conduct, action, and inaction were willful, or, in the alternative, negligent.

76.    As a result of Defendant's action and inaction, the Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit, aggravation, inconvenience, embarrassment, and frustration.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

(a)    Appropriate statutory penalties for each violation of the FCRA;

(b)    Actual damages;

(c)    Punitive damages;

(d)    Reasonable attorney's fees and the costs of this litigation pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

(e)     Pre-judgment and post-judgment interest at the legal rate;

(f)     Appropriate equitable relief, including the correction of Plaintiff's credit score; and

(g)     Such other relief as the Court deems equitable, just, and proper.


**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

> **Plaintiff,**
> **JESSICA JOYCE GIFFORD,**
> **By Counsel,**


**/s/ Benjamin M. Sheridan**
Benjamin M. Sheridan (# 11296)
Jed R. Nolan (#10833)
**Klein & Sheridan, LC**
3566 Teays Valley Road
Hurricane, WV 25526
T: (304) 562-7111
F: (304) 562-7115
E: ben@kleinsheridan.com
E: jed@kleinsheridan.com

*Counsel for Plaintiff*